1  Matthew G. Berkowitz (Bar No. 310426)
   Yue (Joy) Wang (Bar No. 300594)
2  SHEARMAN & STERLING LLP
3  1460 El Camino Real, 2nd Floor
   Menlo Park, CA 94025
4  Telephone: 650.838.3600
   Fax: 650.838.3699
5  Email: matthew.berkowitz@shearman.com
6          joy.wang@shearman.com

7  L. Kieran Kieckhefer (Bar No. 251978)
   SHEARMAN & STERLING LLP
8  535 Mission Street, 25th Floor
   San Francisco, CA 94105
9  Telephone: 415.616.1100
   Fax: 415.616.1339
10 Email: kieran.kieckhefer@shearman.com

11 *Attorneys for Defendant GNOME Foundation*

12 
## UNITED STATES DISTRICT COURT
13 ## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION
14 

15 ROTHSCHILD PATENT IMAGING LLC,      Case No. 4:19-cv-05414-HSG

16                Plaintiff,            **GNOME FOUNDATION'S MOTION TO
17                                       DISMISS THE ORIGINAL COMPLAINT
       v.                               PURSUANT TO RULE 12(b)(6)**
18
19 GNOME FOUNDATION,                    Date:       Feb. 27, 2020
                                        Time:       2:00 PM
20                Defendant.            Courtroom:  No. 2 – 4th Floor
21                                      Judge:      Hon. Haywood S. Gilliam Jr.
                                        Trial Date: TBD

22
23
24
25
26
27
28

1

## <u>TABLE OF CONTENTS</u>

I. Introduction ...................................................................................................................... 1

II. Statement of Issues to be Decided .................................................................................... 2

III. Relevant Factual Background ........................................................................................... 2

IV. The '086 Patent Is Patent-Ineligible Under 35 U.S.C. § 101 .......................................... 5

    A. Section 101 Issues are Ripe for Resolution at the Motion to Dismiss Stage ........................ 5

    B. The Claims of the '086 Patent Are Directed to the Abstract Idea of Receiving, Filtering, and Transmitting Images ............................................................................................................ 6

    C. The Claims of the '086 Patent Fail to Recite Any Inventive Concept ..................................... 8

        1. The '086 Patent Recites Only Generic Components .......................................................... 8

        2. The '086 Patent Does Not Solve A Technological Problem ............................................... 9

        3. Nothing in Claim 4 Prevents It From Being Performed By a Human ............................. 10

V. Conclusion ...................................................................................................................... 11

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*

4
    134 S. Ct. 2347 (2014) ........................................................................................5, 6, 8

5

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
    133 S. Ct. 2107 (2013) ................................................................................................5

6

7

*BASCOM Glob. Internet v. AT&T Mobility, LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ..................................................................................7

8

*ChargePoint, Inc. v. SemaConnect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019) ....................................................................................6

9

10

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................................9

11

*Diamond v. Diehr,*
    450 U.S. 175 (1981) ....................................................................................................9

12

13

*Elec. Power Grp., LLC v. Alstom, S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ..................................................................................7

14

15

*Intellectual Ventures I LLC v. Symantec Corp.,*
    838 F.3d 1307 (Fed. Cir. 2016) ................................................................................10

16

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    788 F.3d 1359 (Fed. Cir. 2015) ..................................................................................9

17

18

*Smart Authentication IP, LLC v. Elec. Arts, Inc.,*
    No 19-cv-01994-SI, 2019 WL 4305556 (N.D. Cal. Sept. 11, 2019) ..........................6

19

*TLI Commc'ns, LLC v. AV Automotive LLC,*
    823 F.3d 607 (Fed. Cir. 2016) ........................................................................6, 7, 8, 9

20

**Statutes**

21

35 U.S.C. § 101 ...............................................................................................1, 2, 11

22

23

24

25

26

27

28

1

<b><u>NOTICE OF MOTION AND MOTION</u></b>

2       PLEASE TAKE NOTICE that on February 27, 2020 at 2:00 PM, Defendant GNOME

3 Foundation ("GNOME") will, and hereby does, move the Court, located at 1301 Clay Street, 4th

4 Floor, Courtroom No. 2, Oakland, California 94612, for an order dismissing Plaintiff Rothschild

5 Patent Imaging, LLC's ("RPI") Original Complaint (D.I. 1) ("Complaint") for infringement of U.S.

6 Patent No. 9,936,086 ("the '086 patent").

7       GNOME brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil

8 Procedure for dismissal of RPI's Complaint on the ground that RPI's sole cause of action for patent

9 infringement fails because the claims of the '086 patent are directed to ineligible subject matter

10 under 35 U.S.C. § 101.  This motion is based on the following Memorandum of Points and

11 Authorities, the arguments of counsel, and any other matters that may properly come before the

12 Court for its consideration.

13

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

**I.      INTRODUCTION**

15       GNOME Foundation is a non-profit that furthers the goals of the GNOME project, helping

16 to create a free software computing program for the general public.  *The GNOME Foundation*,

17 GNOME, https://www.gnome.org/foundation/ (last visited Oct. 14, 2019).  The project is supported

18 by numerous volunteer contributors who develop the code, fix bugs, write documentation and help

19 users.  *Id.*  The Foundation acts as a guiding hand in the process and provides resources and

20 infrastructure.  *Id.*

21       RPI is a notorious non-practicing entity; it, and other entities named after the identified

22 inventor, Leigh Rothschild, have brought nearly three hundred patent cases over the past five years,

23 with almost all of them resolved at or before the initial pleading stage.[1]  RPI has asserted the patent

24 at issue in this action—U.S. Patent No. 9,936,086 ("the '086 patent")—against five other companies

25 in currently pending cases in this and other jurisdictions.

26

27 _____

[1]  In at least one other case, an asserted patent identifying Mr. Rothschild as inventor was found to
28 be ineligible under 35 U.S.C. § 101 on a motion to dismiss.  *See Rothschild Location Techs. LLC v. Vantage Point Mapping, Inc.*, No. 6:15-cv-682, 2016 WL 7049401 (E.D. Tex. Dec. 5, 2016).

This '086 patent is no different than numerous patents previously found to be ineligible by the Federal Circuit.  It is directed to the abstract idea of receiving photographs (*e.g.*, taken on a camera or smart phone), filtering them depending on whether they match a topic, theme, or individual (*e.g.*, photos of the Empire State Building), and then wirelessly transmitting the photographs that match the specified criteria to another location (*e.g.*, a second camera or smart phone).  RPI does not even attempt to allege that the '086 patent contains an inventive concept or uses the generic computer components in an unconventional way because it does not as a matter of law.  Indeed, asserted claim 4 doesn't even require filtering by a computer; on its face, the filtering step can be performed in the human mind.  Nor does the specification describe anything unconventional.  The capturing and transmitting devices are entirely conventional; the specification even acknowledges that the recited image capturing devices can be "virtually any device structured to capture one or more digital images."  D.I. 1, Compl., Ex. A at 4:6-7.  And, the filtering process can be performed manually by users, or with generic "object recognition software or other mechanism(s) for identifying objects or individuals located within a captured image" that a user can facilitate by tagging images or renaming the image file names to identify their contents.  *Id.* at 9:35-54.

Accordingly, the '086 patent is ineligible for patent protection under 35 U.S.C. § 101 on its face.  And, because the '086 patent's eligibility issues cannot be remedied by any amendment of the Complaint, RPI's Complaint should be dismissed with prejudice.

## II.     STATEMENT OF ISSUES TO BE DECIDED

Whether RPI's Complaint alleging patent infringement should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.    RELEVANT FACTUAL BACKGROUND

RPI filed the Complaint on August 28, 2019.  The Complaint asserts that GNOME infringes "at least Claim 4 of the '086 Patent."  D.I. 1, Compl. at ¶ 13.  The '086 patent is entitled "Wireless Image Distribution System and Method" and discloses "a system and method for distributing at least one digital photographic image from a capturing device . . . to one or more receiving devices[.]"  D.I. 1, Compl., Ex. A at 2:38-42.  The '086 patent explains that there is a "need in the art for an image distribution system and method which is structured to dispose one or more

capturing devices in a communicative relation with one or more receiving devices for instantaneous, automatic, and/or selective distribution of images therebetween." *Id.* at 2:28-33. Figure 11, reproduced below, is a flow chart illustrating an embodiment of the invention claimed in the '086 patent. *Id.* at 3:33-39.



FIGURE 11

*Id.* at Fig. 11.

Asserted claim 4 of the '086 patent is directed to a method of receiving images, filtering the images based on their content, and transmitting the filtered images between devices:

4.   A method performed by an image-capturing mobile device, comprising:

receiving a plurality of photographic images;

filtering the plurality of photographic images using a transfer criteria wherein the transfer criteria is a subject identification of a respective photographic image within the plurality of photographic images, wherein the subject identification is based on a topic, theme or individual shown in the respective photographic image;

and transmitting, via a wireless transmitter and to a second image capturing device, the filtered plurality of photographic images.

D.I. 1, Compl., Ex. A at 14:22-33.  Independent claim 1 recites substantially the same limitations as claim 4, but in the context of "[a]n image-capturing mobile device," and further recites "a wireless receiver" and "a processor operably connected to the wireless receiver and the wireless transmitter." *Id.* at 14:5-18.  Claims 2 and 3 add "at last [*sic*] one display assembly" and "at last [*sic*] one local electronic storage medium," respectively, to the features of claim 1.  *Id.* at 19-21.

The '086 patent specification does not disclose any unconventional components, only generic computer components in terms of their known function.  For example, the capturing devices recited in claims 1 and 4 are described in the '086 patent specification as "generally compris[ing] **virtually any device** structured to capture one or more digital photographic images," including "a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc. having the structures and/or mechanism capable of capturing digital photographic images." D.I. 1, Compl., Ex. A at 4:4-18 (emphasis added).  The display assembly recited in claim 2 can be anything "structured and disposed to display to a user thereof various data, images, etc.[, and] may be virtually any size and may include **virtually any display device**, including . . . a liquid crystal display ('LCD')."  *Id.* at 4:31-35, 5:20-24 (emphasis added).  The local electronic storage medium recited in claim 3 can be anything "structured to electronically store the one or more digital photographic images [] thereon," and may include "an internal hard drive or other like mechanism," or "a removable memory card, Universal Serial Bus ('USB') drive, Firewire drive, flash drive, etc."  *Id.* at 4:55-67, 5:39-55.

Nor does the '086 patent disclose any unconventional technology. For example, the '086 specification discloses that the claimed invention uses known modes of wireless transmission, including "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')," or other "wireless network(s) 40 and/or communication protocol [such as] a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." *See* D.I. 1, Compl., Ex. A at 3:44-65. The '086 patent does not describe the "processor" recited in claim 1 in any detail, but it does disclose that the recited image filtering may be carried out by users manually selecting images, *id.* at 6:47-51 & 54-59, or by "object recognition software or other mechanism(s) for identifying objects or individuals within a captured image 25" aided by a user "manually tag[ging] or embed[ding]" an image with the relevant subject matter, theme, or topic or "simply re-nam[ing] the title" of an image with the same. *Id.* at 9:35-54.

## IV.   THE '086 PATENT IS PATENT-INELIGIBLE UNDER 35 U.S.C. § 101

The '086 patent is directed the purely abstract idea of receiving, filtering, and transmitting images, and is therefore ineligible for patent protection.

### A.   Section 101 Issues are Ripe for Resolution at the Motion to Dismiss Stage

The Supreme Court has "long held that [Section 101] contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)). Under the Supreme Court's two-part *Alice* test, a court "must first determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). If so, then the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.*

Whether a claim element or claimed combination is well-understood, routine, and conventional to a skilled artisan in the relevant field is a factual determination, but "when there is no genuine issue of material fact . . . , this issue can be decided . . . as a matter of law." *Smart*

*Authentication IP, LLC v. Elec. Arts, Inc.*, No 19-cv-01994-SI, 2019 WL 4305556 at *3 (N.D. Cal. Sept. 11, 2019) (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018)) (internal citations omitted) (granting motion to dismiss on 101 grounds and dismissing complaint with prejudice).  As a result, even post-*Berkheimer*, the Federal Circuit continues to affirm Section 101 rejections at the motion to dismiss stage.  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019).

RPI's Complaint should be dismissed with prejudice because, as is readily apparent from the face of the Complaint and the '086 patent itself, the '086 patent is directed to an abstract idea without any recitation of an inventive concept.

**B.      The Claims of the '086 Patent Are Directed to the Abstract Idea of Receiving, Filtering, and Transmitting Images**

The claims of the '086 patent fall squarely within the well-established body of Federal Circuit law holding that claims directed to receiving, filtering, and transmitting images are patent-ineligible because they claim abstract ideas.  *See Alice*, 134 S. Ct. at 2355.

For example, in *TLI Communications, LLC v. AV Automotive LLC*, the asserted patent claimed a method of "manually or automatically" assigning "classification data . . . to digital images and sending those images to a server [that] extracts the classification data and stores the digital images, 'taking into consideration the classification information.'"  823 F.3d 607, 610 (Fed. Cir. 2016).  Representative claim 17 is very similar to the claims at issue here:

17. A method for recording and administering digital images, comprising the steps of:

recording images using a digital pick up unit in a telephone unit,

storing the images recorded by the digital pick up unit in a digital form as digital images,

transmitting data including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,

receiving the data by the server,

extracting classification information which characterizes the digital images from the received data, and

storing the digital images in the server, said step of storing taking into consideration the classification information.

*Id.* The Federal Circuit found that claim 17 was, on its face, drawn to the abstract idea of "classifying an image and storing the image based on its classification." *Id.* at 611. The recited physical components—"a telephone unit" and a "server"—"merely provide a generic environment in which to carry out this abstract idea," not "a specific improvement to computer functionality." *Id.* at 611-12. "The specification [also] fail[ed] to provide any technical details for the tangible components, but instead predominantly describes the system and methods in purely functional terms," making them "merely conduits for the abstract idea." *Id.* at 612-13.

Similarly, in *Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, the Federal Circuit found that "the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory. The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." 776 F.3d 1343, 1347 (Fed. Cir. 2014). The Federal Circuit also rejected the patentee's arguments that its claims are not directed to an abstract idea because "human minds are unable to process and recognize the streams of bits output by a [recited] scanner," noting that "the claims in *Alice* also required a computer that processed streams of bits, but nonetheless were found to be abstract." *Id.*

According to the claims of the '086 patent, images are received by "an image-capturing mobile device," filtered based in their content, and transmitted to "a second image capturing device." *See* D.I. 1, Compl., Ex. A at 14:5-33. Nothing more is required; nothing happens to the function of the claimed physical components, and no tangible product is affected. Like the claims at issue in *TLI* and *Content Extraction*, therefore, the claims of the '086 patent are directed to the well-known abstract idea receiving, filtering, and transmitting images. *See TLI*, 823 F.3d at 610; *Content Extraction*, 776 F.3d at 1345; *see also Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (claims reciting "collecting information, analyzing it, and displaying certain results" fall into "a familiar class of claims 'directed to' a patent-ineligible concept"); *BASCOM Glob. Internet v. AT&T Mobility, LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (the concept

of filtering content was an abstract idea "because it is a long-standing, well-known method of organizing human behavior, similar to concepts previously found to be abstract") (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014)).

### C.      The Claims of the '086 Patent Fail to Recite Any Inventive Concept

The claims of the '086 patent, individually or as an ordered combination, further fail to recite an inventive concept, confirming their patent-ineligibility. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

### 1.      The '086 Patent Recites Only Generic Components

In addition, the physical components recited in the '086 patent merely provide a generic environment in which well-understood, routine, and conventional activities previously known in the industry are used to carry out the abstract idea of receiving, filtering, and transmitting images. *See TLI Commc'ns, LLC v. AV Automotive LLC*, 823 F.3d 607, 613-15 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2359; *Intellectual Ventures I, LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1371-72 (Fed. Cir. 2015)); D.I. 1, Compl., Ex. A at 14:5-33. For example, the '086 patent specification states that capturing devices—which are recited in claims 1 and 4—"generally comprise[] **virtually any device** structured to capture one or more digital photographic images," including "a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc. having the structures and/or mechanism capable of capturing digital photographic images." *Id.* at 4:4-18 (emphasis added). Similarly, the '086 patent describes the "display assembly" recited in claim 2 as anything "structured and disposed to display to a user thereof various data, images, etc.[, and] may be virtually any size and may include **virtually any display device**, including . . . a liquid crystal display ('LCD')." *Id.* at 4:31-35, 5:20-24 (emphasis added). The '086 patent also describes the "local electronic storage medium" recited in claim 3 as anything "structured to electronically store the one or more digital photographic images [] thereon," and may include "an internal hard drive or other like mechanism," or "a removable memory card, Universal Serial Bus ('USB') drive, Firewire drive, flash drive, etc." *Id.* at 4:55-67, 5:39-55.

The '086 patent specification does not discuss the "wireless transmitter" recited in claims 1

and 4 or the "wireless receiver" recited in claim 1 in any detail, but does describe in purely functional terms, and in well-known examples, the modes of wireless transmission that may be used in the claimed invention, listing "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')," or other "wireless network(s) 40 and/or communication protocol [such as] a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." *See* D.I. 1, Compl., Ex. A at 3:44-65.   The '086 patent also does not discuss the "processor" recited in claim 1 in any detail, underscoring the fact that the recited processor is a generic environment for carrying out the abstract idea of receiving, filtering, and transmitting images. *See* Compl., Ex. A; *TLI*, 823 F.3d at 611-12.

In sum, the additional claimed elements of the '086 patent, individually and as an ordered combination, do not transform the claims into patent-eligible subject matter because they behave exactly as expected according to their normal use, and in a well-understood, routine, and conventional manner. *See TLI*, 823 F.3d at 613-15.   The '086 patent therefore preempts all use of the abstract idea of receiving, filtering, and distributing images without providing a specific technical solution beyond simply using generic components in a conventional way, or a specific improvement in the operation of any of the claimed physical components.

## 2. The '086 Patent Does Not Solve A Technological Problem

The '086 patent does not even purport to solve a technological problem or a problem particular to the internet. *See Diamond v. Diehr*, 450 U.S. 175 (1981); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256-57 (Fed. Cir. 2014).   The '086 patent merely purports to solve the problem of individuals' delay in or failure to share photographs with others by automating the process. *See* Compl., Ex. A at 2:4-33.   But the need to perform tasks automatically is not a unique technical problem and is insufficient to render a claim directed to an abstract idea patent eligible. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or accurately is insufficient to render a claim patent eligible.").

### 3. Nothing in Claim 4 Prevents It From Being Performed By a Human

Nothing in claim 4 of the '086 patent prevents it from being performed by a human. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016); D.I. 1, Compl., Ex. A at 14:5-33. Specifically, though claim 1 of the '086 patent recites a "processor" configured to receive, filter, and transmit images, claim 4 does not similarly limit performance of these steps to a recited component. The specification also admits that human users can, and indeed already do, perform each of the receiving, filtering, and transmitting steps. For example, the background of the '086 patent discloses that it is known that humans take digital photographic images and send them to each other based on content of the images. *See id.* at 1:63-2:27.

Moreover, the '086 patent admits that the step of filtering images based on their content can be performed in the human mind. The '086 patent specification expressly states that the claimed invention encompasses users manually filtering images prior to transmission. D.I. 1, Compl., Ex. A at 6:47-51 ("[A] user at the capturing device 30 may be able to **select or decide** which images 25 **are in fact communicated** to the receiving device 30[.]") (emphasis added); *id.* at 6:54-59 ("[A] user at the receiving device 30 may view the image(s) 25, the title of the image(s) 25, a thumbnail of the image(s) 25, or other data component of the image(s) 25 . . . . The user may then selectively receive the image(s) 25 by **selectively accepting or rejecting** them.") (emphasis added). And, even when the filtering is not carried out by a human but by "object recognition software or other mechanism(s)," a user can facilitate the filtering process by "**manually** tag[ging] or embed[ding] the images 25 with data corresponding to the subject matter, theme, topic thereof" or "**simply renam[ing]** the image 25 to include a title or name corresponding to the [desired subject matter, theme or topic]." *Id.* at 9:39-54 (emphasis added).

As a result, the '086 patent not only sets a conventional human practice—receiving images, filtering them based on their content, and transmitting the results—in the context of electronic communications, *see supra* Section V.C.2, but claim 4 also attempts to claim a well-known process capable of being performed in the human mind. *Symantec*, 838 F.3d at 1318 ("[W]ith the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper."); *see also Content*

1   *Extraction and Transmission LLC v. Wells Fargo Bank, N.A*, 776 F.3d 1343, 1347 (Fed. Cir. 2014)

2   ("The concept of data collection, recognition, and storage is undisputedly well-known.  Indeed,

3   humans have always performed these functions.").

4         Accordingly, each of claims 1 through 4 of the '086 patent are patent ineligible under 35

5   U.S.C. § 101 and the Complaint should be dismissed with prejudice.

6   **V.     CONCLUSION**

7         For the reasons stated above, RPI's Complaint alleging patent infringement has failed to allege

8   sufficient facts to state a claim for relief because the asserted U.S. Patent No. 9,936,086 is directed to

9   patent ineligible subject matter under 35 U.S.C. § 101.  Accordingly, GNOME respectfully requests

10   that the Court grant its motion and enter the proposed order submitted herewith dismissing the

11   Complaint with prejudice.

12   Dated:        October 21, 2019                    Respectfully submitted,

13                                                     SHEARMAN & STERLING LLP

14                                                     By:    */s/ Matthew G. Berkowitz*

15                                                     Matthew G. Berkowitz

16                                                     *Attorney for Defendant, GNOME Foundation*

17

18

19

20

21

22

23

24

25

26

27

28