STEVEN A. NIELSEN, CALIFORNIA STATE BAR NO. 133864
(STEVE@NIELSENPATENTS.COM)
100 LARKSPUR LANDING CIRCLE, SUITE 216
LARKSPUR, CA 94939-1743
TELEPHONE:(415) 272-8210


JAY JOHNSON (TX SBN 24067322)
(Application for Pro Hac Vice Filed)
KIZZIA JOHNSON PLLC
1910 PACIFIC AVE.
SUITE 13000
DALLAS, TX 75201
(214) 451-0164
jay@kjpllc.com

Attorneys for Plaintiff
ROTHSCHILD PATENT IMAGING LLC, a Texas limited liability corporation

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **ROTHSCHILD PATENT IMAGING, LLC** | PATENT |
| Plaintiff, | Case No. 4:19-cv-05414-HSG |
| v. | **RESPONSE TO MOTION TO DISMISS** |
| **GNOME FOUNDATION,** | |
| Defendant. | Judge: Hon. Haywood S. Gilliam Jr. |

i
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

## TABLE OF CONTENTS

I.   INTRODUCTION - SUMMARY OF THE ARGUMENT AND FACTUAL BACKGROUND .................................................................................................................. - 1 -

II.   LEGAL STANDARD ................................................................................................ - 2 -
   A.   Rule 12(b)(6) Motions ..................................................................................... - 2 -
   B.   Patent Eligibility Under 35 U.S.C. § 101 ........................................................ - 3 -

III.   THE '086 PATENT IS PATENT ELIGIBLE ........................................................... - 8 -
   A.   Alice Step One: The '086 Patent Claims Are NOT Directed to an Abstract Concept - 8 -
   B.   Alice Step Two: Even if the '086 Patent Claims are Abstract, the Elements and Limitations of the Claims Transform the Abstract Idea Into Patent Eligible Subject Matter ............................................................................................................. - 12 -

IV.   RECENT CASE LAW REGARDING STEP TWO DEMONSTRATES THAT THIS CASE SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6) ...................... - 14 -

V.   CONCLUSION ........................................................................................................ - 16 -

# **TABLE OF AUTHORITIES**

**Statutes**

35 U.S.C. §101 ............................................................................................................*passim*

**Cases**

*Aatrix Software, Inc. v Green Shades Software, Inc*., Appeal No. 2017-1452 (Fed. Cir. 2018)....2, 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 2347, 134 S. Ct. 2347, 2354 (2014) …..*Passsim*

*Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1368 (11th Cir. 1997)............ 2

*Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed.Cir. 2012).... 3

*Bascom Global Internet v. AT&T Mobility LLC*, No. 2015-1763, 13-14 (Fed. Cir. June 27, 2016). 12

*Berkheimer v. HP Inc.*, Appeal No. 2017 (Fed. Cir. 2018)......................................................... 14

*California Inst. of Tech. v. Hughes Comm., Inc*., 2014 U.S. Dist. WL 5661290 (C.D. Cal. Nov. 3, 2014) ................................................................................................................................... 3

*Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 U.S. Dist. WL 4922524 (N.D. Ill. Sept. 29, 2014)................................................................................................................................3

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) ........................................................................................................................................ 11, 12

*Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014) ......................................................................................................................3

*DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F.Supp.2d 509, 524-525 (E.D. Tex. 2013) ............4

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 155 (Fed Cir. 2014)  ……………….
5, 6, 14

*Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980) ……………………………………......4

*Enfish, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016)* ………………………....6, 4, 11

*Funk Bros. Seed Co. v. Kalo Inoculant Co*., 333 U.S. 127, 130 (1948) ………………………. 4

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) …………….. 11

*Internet Patents*, 790 F.3d at 1346 …………………………………………………..……….10

*Mayo Collaborative Serv. v. Prometheus Labs., Inc*., 566 U.S. 66, 132 S. Ct. (2012) ………..5

*McRO*, 837 F.3d at 1314 …………………………………………………………………… 10

*Phonometrics, Inc. v. Hospitality Franchise Systems*, 203 F.3d 790, 793-794 (Fed.Cir. 2000)......2

*Recognicorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017)......................................... 12

*Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 (E.D. Tex. May 15, 2014).............................................................................................................................. 3

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d at 1338-39 (Fed. Cir 2013) ...................................... 3

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ............................................. 16

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015) ............................... 12

*Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. 2870, 134 S.Ct. 2870 (2014)...................... 2, 3

iii
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

## I.     INTRODUCTION - SUMMARY OF THE ARGUMENT AND FACTUAL BACKGROUND

On August 28, 2019 Plaintiff Rothschild Patent Imaging LLC filed its lawsuit against Gnome Foundation ("Gnome" or "Defendant") and accuses Gnome of infringing U.S. Patent No. 9,936,086 (the '086 Patent).  On October 21, 2019 Defendant filed its motion to dismiss based on 35 U.S.C. § 101.

Defendant's analysis of the '086 Patent is misleading and flawed.   Defendant's entire argument in connection with the first *Alice* step is based on an oversimplified and artificially constructed "abstract idea," which ignores key elements of the '086 Patent claims.  Defendant then identifies components in the claims and asserts that the components are "generic."  Defendant's assertion, however, ignores claim elements and limitations that dictate the tasks performed by computer components, and which show that the components do not function in a generic manner.  The '086 Patent discloses and claims non-abstract and inventive concepts, which comprise improvements in computer and communications technology existing at the time of filing of the provisional application for the '086 Patent on June 2, 2017.

The claims are directed to a system and method comprising at least one capturing device and at least one receiving device disposed in a communicative relation with one another via at least one wireless network.  '086 Patent, Abstract.  The capturing device is structured to capture the at least one digital photographic image via, for example, a capture assembly.  *Id*. The receiving device is cooperatively structured to receive the digital photographic image via, for example, the wireless network. *Id*. In addition, the capturing device and receiving device may be disposed in a selectively paired relationship via one or more common predefined pairing criteria. *Id*. Further, the at least one digital photographic image may be filtered via at least one predefined transfer criteria disposed on the capturing device and/or receiving device. *Id*.

Even if it could be argued that the '086 Patent claims are directed to an abstract idea under the first *Alice* step, then, under the second *Alice* step, the claims recite elements and limitations that advance the abstract idea to patent eligible subject matter. The claims of the '086 Patent recite tangible components. The invention recited therein overcomes a problem specifically arising in the realm of computer networks. It neither involves a building block of ingenuity, nor does it seek to monopolize a fundamental financial or business idea. It also does not merely recite functionality that could be performed by human hand. The recited invention also improves an existing technological process. In short, just as in *DDR Holdings* and *Enfish*, all of the factors of the *Alice* decision, and the analysis under Section 101, point to the patent eligibility of the claims of the patent-in-suit.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motions

"A motion to dismiss for failure to state a claim must be denied if 'in the light most favorable to the plaintiff and with every doubt resolved in the pleader's favor—but disregarding mere conclusory statements—the complaint states any legally cognizable claim for relief.'" *Aatrix Software, Inc. v Green Shades Software, Inc.*, Appeal No. 2017-1452 (Fed. Cir. 2018), at 6; see also *Phonometrics, Inc. v. Hospitality Franchise Systems*, 203 F.3d 790, 793-794 (Fed. Cir. 2000) ("the dismissal standard is extraordinary, and one not to be taken lightly"; a motion to dismiss "is viewed with disfavor and rarely granted." (citing and quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997))). It is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter… because every issued patent is presumed to have been issued properly, absent "clear and convincing" evidence to the contrary*." Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39

(Fed. Cir. 2013) (vacated on other grounds by sub nom. *Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. 2870, 134 S. Ct. 2870 (2014)); *Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 U.S. Dist. WL 4922524 at *2 (N.D. Ill. Sept. 29, 2014).

Although ineligibility under §101 is a question of law, it is "rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d at 1338-39 (Fed. Cir. 2013); *The California Inst. of Tech. v. Hughes Comm., Inc.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014). And, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a §101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). A dismissal under §101 is therefore only appropriate "when the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (citing *Ultramercial,* 722 F.3d at 1339); also *Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014); *Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 at *3 (E.D. Tex. May 15, 2014).

**B.      Patent Eligibility Under 35 U.S.C. § 101**

35 U.S.C. § 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Section 101 sets forth four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter. Although acknowledging that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," the Supreme Court has identified three exceptions

- 3 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

to Section 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980). The basis for these exceptions is that patenting basic tools of scientific and technological work, which the Supreme Court referred to as the building blocks of ingenuity, would tend to impede innovation rather than to promote it. *Id.*

However, all inventions in effect embody, use, or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-ineligible merely because it involves an abstract concept. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 2347, 134 S. Ct. 2347, 2354 (2014). Although patenting a building block of ingenuity would risk disproportionately tying up the use of the underlying ideas, integrating the building blocks into something more "pose[s] no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 2354-55.

"Congress took this permissive approach to patent eligibility to ensure that 'ingenuity should receive a liberal encouragement.'" *Id.* (citing 447 U.S. at 308-309, 100 S. Ct. 2204); see *DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F.Supp.2d 509, 524-525 (E.D. Tex. 2013). Also, it is well-known that issued patent claims carry a statutory presumption of validity. *DDR Holdings*, 954 F.Supp.2d, at 525. And, that presumption applies when §101 is raised as a basis for challenging validity in district court proceedings. *Id.*

In this regard, the Supreme Court has stated that "the concern that drives this exclusionary principle [is] one of pre-emption." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citation omitted). Consequently, the Supreme Court has required that "[i]f there is to be invention from such a discovery, it must come from the application of the law of nature to a new and useful end." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). The Supreme Court in *Alice* warned that courts must "tread carefully in construing

- 4 -

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

this exclusionary principal [of patent eligibility] lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354 (citation omitted).

     *Alice* presents a two-step test for determining patent eligibility. The first step "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 134 S. Ct. at 2355. If the Court finds that the patent is not directed to a patent ineligible concept, i.e., the patented invention is not an abstract idea, then the analysis ends there and the motion to dismiss under §101 must be denied. If, however, the Court finds that the patented invention is directed to a patent ineligible concept, then the Court turns to the second step and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2357 (citing *Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289, 1294, 1298 (2012); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 155 (Fed Cir. 2014). Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize an abstract idea. *Id.*

     When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination. *Id.* at 2355. Here, a court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (citing *Mayo*, 566 U.S. at 78-79). *Alice* called this second step the "search for an 'inventive concept' - i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (citing *Mayo*, 566 U.S. at 72-73).

In *DDR Holdings*, the Federal Circuit addressed whether claims directed to "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" were patentable. 773 F.3d at 1248. After analyzing relevant precedent, the Court began the two-step analysis by finding that the asserted claims did not recite a mathematical algorithm, or a fundamental economic or longstanding business practice. *Id.*, at 1257. Furthermore, the Court found that "[a]lthough the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet." *Id*. The Court held that the claims stood apart from prior cases because the claims were addressing a problem particular to computer technology:

> But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id*. Inventions are therefore patentable under §101 if the claims do not attempt to preempt every application of an idea and instead recite a specific way of solving a computer-based problem. *Id.*, at 1259. The Federal Circuit then held that the claims directed to the software implemented invention were patent eligible under §101. *Id*.

The Federal Circuit has confirmed that under *Alice*, claims directed to software, in many instances, recite patent eligible subject matter. In *Enfish, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016)*, the Federal Circuit analyzed the patent eligibility of claims directed to data stored in a table in what was called a "self-referential" model. The arrangement of data distinguished over tables adhering to a "relational" model. The Court noted that *Alice* could not be read:

> to broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two [of Alice].

- 6 -

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

> Indeed, some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as chip architecture, and LED display, and the like. ***Nor do we think that claims directed to software, as opposed to hardware, are inherently abstract and therefore only properly analyzed at the second set of the Alice analysis. Software can make non-abstract improvements to computer-related technology just as hardware improvements can.*** . . . Therefore, we find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.

*Id*. at 11 (Emphasis added). The Court recognized that improvements to computer-related technology can encompass improvements to the functioning of a computer itself or improvements to an existing technological process. *Id*. at 10. The Court found that where the focus of claims is on an improvement to computer functionality, and not on economic or other tasks for which a computer is used in its ordinary capacity, the claims are not directed to an abstract idea within the meaning of *Alice*. *Id*. at 12. The Court also noted that the district court had erred in stripping down the claims to a bare concept. *Id*. at 14.

> The district court concluded that the claims were directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table" or, more simply, "the concept of organizing information using tabular formats. . . . However, ***describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule***.

*Id*. (Emphasis added). The claims were not directed to just any form of storing tabular data, but instead were specifically directed to a self-referential table for a computer database. *Id*. "In finding that the claims were directed simply to 'the concept of organizing information using tabular formats,' . . . the district court oversimplified the self-referential component of the claims and downplayed the invention's benefit." *Id*. at 15. Because the claims recited more than simply performing a well-established business practice or an abstract mathematical formula on a general purpose computer, they were determined to be non-abstract under Alice. *Id*. at 16-17. And, it did not matter that the invention was able to run on a general-purpose computer or that the improvement was not defined by reference to physical components. *Id*.

- 7 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

### III. THE '086 PATENT IS PATENT ELIGIBLE

#### A. Alice Step One: The '086 Patent Claims Are NOT Directed to an Abstract Concept

Defendant's Motion should be denied because, when the facts are liberally construed in favor of Plaintiff, Defendant does not satisfy its high burden of proving patent ineligibility by clear and convincing evidence. The claimed invention is patent eligible under Section 101 because the claims of the '086 Patent do not recite an abstract idea. Defendant contends that the claims are directed to the abstract idea of "receiving, filtering, and transmitting images." Motion, at 6. First, even Defendant's characterization of the concept of the '086 Patent claims is arguably non-abstract. Given the technology at the time of the invention, Defendant's characterization itself is arguably not a preemption of a basic building block of technology. Second, Defendant's characterization is flawed because it is a grossly oversimplified statement of the claims, which ignores key limitations and is purposely generated to fit Defendant's narrative.

In its entirety, Claim 4 recites:

4. A method performed by an image-capturing mobile device, comprising:

receiving a plurality of photographic images;

filtering the plurality of photographic images using a transfer criteria wherein the transfer criteria is a subject identification of a respective photographic image within the plurality of photographic images, wherein the subject identification is based on a topic, theme or individual shown in the respective photographic image; and

transmitting, via a wireless transmitter and to a second image capturing device, the filtered plurality of photographic images.

'086 Patent, Claim 4.

Claim 1, in its entirety, recites:

1. An image-capturing mobile device, comprising

a wireless receiver;

a wireless transmitter; and a processor operably connected to the wireless receiver and the wireless transmitter, wherein the processor is configured to:

receive a plurality of photographic images;

filter the plurality of photographic images using a transfer criteria wherein the transfer criteria is a subject identification of a respective photographic image within the plurality of photographic images, wherein the subject identification is based on a topic, theme or individual shown in the respective photographic image; and transmit, via the wireless transmitter and to a second mobile device, the filtered plurality of photographic images.

Defendant's "abstract idea" picks three words from the claims and ignores the rest. Defendant's mischaracterization in crafting its "abstract idea" highlights Defendant's attempt to strip the claim of key elements and/or ignore those elements completely. Defendant ignores method by which images are filtered including "using a transfer criteria wherein the transfer criteria is a subject identification of a respective photographic image within the plurality of photographic images, wherein the subject identification is based on a topic, theme or individual shown in the respective photographic image." Defendant also ignores the fact that the images which are transferred are the filtered images. These images have been filtered by the image capturing device or, more specifically, by the processor of the image capturing device. Defendant ignores these limitations because if the limitations are considered in view of the law governing a Section 101 analysis, it is apparent that the processor that is performing the filtering

is functioning in a non-generic manner.  As such, the invention recited in the claims of the '086 Patent cannot be consider "abstract."

Moreover, in considering *Alice* and its progeny, the claims do not merely recite a mathematical algorithm, an economic practice, a pre-computer business practice, or a computer performing a non-essential function. The claims do not preempt any basic building block of technology. Rather, the claims are rooted in computer technology and improvements to a technological process and are patent eligible.  As such, the claims of the '086 Patent are not directed to an abstract idea.

This Court must consider the claims in their entirety to ascertain whether they are directed to ineligible subject matter under *Alice* step one. *See Internet Patents*, 790 F.3d at 1346. Removing language from the claims as inconvenient "excess verbiage" is not permitted and an improper method of performing step one.  Moreover, the omitted claim language defines the solution to the then-existing computer and communications problem in existing computer and communications technology of communicating with multiple networked devices requiring specific protocol instructions for each device using multiple user interfaces. The specification of the '086 Patent clearly defines this problem and solution as shown above.  Defendant improperly avoids the inconvenient purpose of the claims by intentionally omitting key language from the claims that define the solution.

The omitted claim language is clearly directed at solving the then-existing computer and communications problem and communicating with networked devices that require specific communication control protocols with a single user interface. The omitted language "focus[es] on a specific means or method," *McRO*, 837 F.3d at 1314, and "contains an inventive concept sufficient to transform' the [allegedly] claimed abstract idea into a patent-eligible application . . .

.” *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) at 1316. Defendant intentionally describes the claims at too high a level of abstraction "untethered from the language of the claims" to ensure that "the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

Defendant, of course, relies heavily on the *Alice* decision. *Alice*, however, did not deal directly with software or computer-related inventions and most certainly did not hold that software and/or computer related inventions could not present patent eligible subject matter. *Alice* concerned a scheme for mitigating settlement risk, i.e., the risk that only one party to an agreed-upon financial exchange will satisfy its obligation. The Court held that the claims directed to this scheme were not patentable subject matter under § 101 because they were drawn to the abstract idea of "intermediated settlements," and generic computer implementation, alone, did not transform the abstract idea into something patentable. *Alice*, 134 S. Ct. at 2350-51. The Court was also concerned with distinguishing patents that "claim the 'building[g] block[s]' of human ingenuity which are ineligible for patent protection, from those that integrate the building blocks into something more." *Id*. at 2350. The claims at issue are directed to improvements in computer technology and do not preempt building blocks of human ingenuity.

Defendant cites *TLI Communications* and *Content Extraction* as support for its argument that the claims are directed to an abstract idea. However, both of these cases, as with other cases similar to them, are distinguishable. In *TLI Communications*, as noted by Defendant, the claim at issue was transmitting data that included classifications and then extracting the classifications from the data at the recipient component. Motion at 6-7. Similarly, in Content Extraction, the claim at issue concerned recognizing data within a data set (extracting data) and transmitting the recognized data. Motion at 7. While the Federal Circuit has held that transmitting and extracting

- 11 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

data are abstract ideas which are performed by generic processors, the elements and limitations of the claims at issue in this case go beyond transmitting and extracting data. In the present case, the claims concern a processor or device that filters images according to certain prescribed criteria. While it might be true that a generic processor extracts and transmits data, filtering data according to certain specific criteria is functionality that could not be said to be generic, at least not at the time of the filing of the application leading to the '086 Patent.

### B. Alice Step Two: Even if the '086 Patent Claims are Abstract, the Elements and Limitations of the Claims Transform the Abstract Idea Into Patent Eligible Subject Matter

Even if the Court finds that the '086 Patent directed to an abstract idea, the claims provide an inventive concept in the application of the abstract idea such that the elements of each claim both individually and 'as an ordered combination' transform the nature of the claim into a patent-eligible application. *See, e.g.*, *Bascom Global Internet v. AT&T Mobility LLC*, No. 2015-1763, 13-14 (Fed. Cir. 2016) ("The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations.") (citing *Alice*, 134 S. Ct. at 2355).

In the second *Alice* step, the Court considers the elements of the claims to determine whether they transform the nature of the claim into a patent-eligible application of the abstract idea. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). This is the search for an inventive concept, which is something sufficient to ensure that the claim amounts to significantly more than the abstract idea itself. *See id*. "To save a patent at step two, an inventive concept must be evident in the claims." *Recognicorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). Merely reciting the use of a generic computer or adding the words "apply it with a computer" cannot convert a patent-ineligible

- 12 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

abstract idea into a patent-eligible invention. *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015) (citing *Alice*, 134 S. Ct. at 2358).

Defendant's *Alice* step-two analysis is nothing more than a repeat of its flawed step-one argument. Defendant zeros in on certain components and argues that those components are conventional or well-known, all while ignoring the very claim limitations that make it clear the components are configured, and operate, in a non-generic manner. For example, Defendant discusses the "image capturing device" and the fact that the '086 Patent Specification indicates that this can mean almost any device capable of capturing images. Motion 8-9. However, nowhere in this discussion does Defendant address the fact the claims recite additional limitations concerning filtering images by specific criteria. While certain generic components may be used as a starting point, the claimed invention cannot be accomplished by the use of generic components. The elements and limitations ignored by Defendant indicate that those components are non-generic and perform in a non-generic manner. A conventional, or generic, "processor" processes data. That is, it performs computations on that data. It can extract and transmit data. However, only a specialized, non-generic processor can be configured to receive images, filter those images based on specified criteria, and transmit the filtered images to a second device.

Defendant's description of the claimed invention (indeed, its entire argument regarding the inventive concept of the claims) intentionally omits the key claim language described above to fit its misleading narrative. As stated, the inventive concept of the claims is found in the language that Defendant omits from its analysis. These limitations combined with their supporting disclosure in the specification provide the inventive concept of improving computer and communications technology with networked devices and modules that require specific

- 13 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

communication protocols, configurations, and interfaces. The claim limitations show that the claims recite significantly more than merely directing routine and conventional functions of "processors, image capturing devices," and other components. Simply because a claim element contains a component or word that is conventional does not make the claim element "conventional" as a whole. Further, Defendant's entire strategy in arguing the second step of *Alice* is to take the elements one at a time. This improperly ignores the mandate that the additional claim elements be considered together to determine whether they lend patent eligibility to an abstract idea.

In *DDR Holdings, LLC v. Hotels.com, L.P.*, the Federal Circuit held that claims that "specify how interactions with the Internet are manipulated to yield a desired result" and recite "a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet" are patent-eligible under section 101. 773 F.3d 1245, 1258–59 (Fed. Cir. 2014). The claims in the '086 Patent as shown above, like in *DDR*, are specific and provide technical detail regarding how certain components are configured and operate in a non-generic manner. The very elements that are ignored by Defendant's step-two analysis are the elements that lend patent eligibility to an abstract idea (assuming the '086 Patents are directed to an abstract idea in the first instance).

**IV.   RECENT CASE LAW REGARDING STEP TWO DEMONSTRATES THAT THIS CASE SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)**

In *Berkheimer v. HP Inc.*, Appeal No. 2017-1437 (Fed. Cir. 2018), the Federal Circuit held that questions of fact underline patent eligibility determinations. The Court held that "[t]he second step of the *Alice* test is satisfied when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the

- 14 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

industry." (quotations omitted). The Court elaborated:

> The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence. Like indefiniteness, enablement, or obviousness, whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts.

*Id*. (citations omitted). The Federal Circuit determined that the district court had erred in concluding that there were no underlying factual questions concerning the Section 101 inquiry. *Id*. at 14. The Federal Circuit recognized that that questions relating to the second *Alice* step depend upon factual determinations.

> Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.

*Id*. at 14.

Similarly, in *Aatrix Software, Inc. v. Green Shades Software, Inc*., Appeal No. 2017-1452 (Fed. Cir. 2018), the Federal Circuit held that the district court erred in applying the Alice two-step validity test before the plaintiff had an opportunity to present allegations which would have materially affected the application of the *Alice* test.

> The district court erred to the extent it determined that claim 1 of the '615 patent is ineligible because it is not directed to a tangible embodiment. The district court granted this Rule 12(b)(6) motion without claim construction. We have some doubt about the propriety of doing so in this case but need not reach that issue because it did err when it denied leave to amend without claim construction and in the face of factual allegations, spelled out in the proposed second amended complaint, that, if accepted as true, establish that the claimed combination contains inventive components and improves the workings of the computer.

*Id*. at 6. *Aatrix* further held that "it remains true after *Alice Corp. Pty. v. CLS Bank International*, 134 S. Ct. 2347 (2014), that '[a] § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent eligible subject matter.'" Id.

- 15 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

(quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014)). In *Aatrix*, the Federal Circuit stated that Claim 1 of the '615 Patent met the requirement of patent eligibility:

> Like many claims that focus on software innovations, it is a system claim. It claims a data processing system which clearly requires a computer operating software, a means for viewing and changing data, and a means for viewing forms and reports. **This is very much a tangible system.**

*Id*. at 6-7 (emphasis added and footnote omitted).

As in these decisions, the claims here recite certain components that are configured and operate in a non-generic manner and that the claims recite more than known concepts operating on generic computer devices. Given these recent decisions, Plaintiff respectfully submits that it is improper to dismiss this case based on Section 101 in the context of a Rule 12(b)(6) motion. In this case there are, at a minimum, underlying factual questions concerning whether the claimed elements and limitations constitute an inventive concept, and whether the recited components are non-generic and/or operate in a non-generic manner. *Id*. at 8.

## V.   CONCLUSION

The claims of the '086 Patent are not directed to an abstract idea and cannot be properly boiled down to entering and transmitting information as Defendant would contend. Defendant has wholly failed in its heavy burden to present facts and arguments as to why this Court should adopt a bare conclusion that Claims are directed to this alleged, stripped-down concept. Even if the Court determines that Claims are, in fact, directed to an abstract idea, the claims recite additional elements and limitations that transform that abstract idea into something patent eligible – and something that does not impinge on the free use of any fundamental building blocks of human ingenuity. Defendant's Motion is based almost completely on rhetoric and gross oversimplification of claim terms (or outright ignoring claim limitations). Each section of Defendant's Motion ignores limitations of the very claim element at issue and, particularly with

respect to the second *Alice* step, Defendant's arguments ignore the additional claim elements as a whole.  For at least the foregoing reasons, Defendant's Motion should be denied.

Dated: December 4, 2019
          Respectfully Submitted
          */s/Steven Nielsen*
          Steven Nielsen (SBN 133864)
          steve@ Nielsenpatents.com
          100 Larkspur Landing Circle
          Suite 216
          Larkspur, CA 94939-1743
          Telephone:(415) 272-8210

          Jay Johnson (TX SBN 24067322)
          (Application for Pro Hac Vice Pending)
          Kizzia Johnson PLLC
          1910 Pacific Ave.
          Suite 13000
          Dallas, TX 75201
          (214) 451-0164
          jay@kjpllc.com

          *Attorneys for Plaintiff Geographic Location Innovations, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2019, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

          */s/Steven Nielsen*
          Steven Nielsen

- 17 -
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**